Audrey Van Dament v. Commissioner.
Van Dament v. Commissioner
Docket No. 85964.
United States Tax Court
T.C. Memo 1962-216; 1962 Tax Ct. Memo LEXIS 90; 21 T.C.M. (CCH) 1153; T.C.M. (RIA) 62216; September 14, 1962
*90 Audrey Van Dament, pro se, 814 Stanley Court, Royal Oak, Mich. Ralph A. Anderskow, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the income tax of petitioner for the taxable year 1956 in the amount of $162.53. The sole issue to be decided is whether petitioner has overstated the amount of contributions and interest in a return showing her taxable income and deductions for the involved year and whether, in such return, she has understated deductible taxes paid in the amount of $3.75. Findings of Fact A statement attached to respondent's deficiency notice herein is as follows: STATEMENT Mrs. Audrey Van Dament, 814 Stanley Court, Royal Oak, Michigan
Income Tax Liability for Taxable Year Ended December 31, 1956 Year
Deficiency
1956
$162.53
In making this determination of your income tax liability, careful consideration has been given to your protest received November 17, 1958 and to the statements made at conferences held on January 20, 1959 and December 17, 1959. It is held that your taxable income for the calendar year 1956 has been understated *91 in the net amount of $739.43 as computed below: Overstatement of contributions paid
$700.00
Overstatement of interest expense
43.18
Understatement of taxes paid
(3.75)
Net amount of understatement
$739.43
In computing the deficiency the tax withheld from your wages in the amount of $551.26 has been reduced by the amount of $162.73, representing a check dated May 24, 1957 issued to you in accordance with your request for a refund of an overpayment of $162.73 claimed on your original Form 1040 filed on April 15, 1957. Petitioner is an individual residing at Royal Oak, Michigan, who sometime in April of 1957 prepared what she designates a "card form 1040A" return of her 1956 taxable income. This form together with a list of her interest payments and contributions she handed to one John M. Scheisler in the Post Office and Federal Court Building in the city of Detroit, Michigan, within the time limited by statute for filing her 1956 income tax return. In her petition, petitioner alleges that "The return for the period here involved was filed with the district director for the Detroit district of Internal Revenue Service." This allegation is admitted in respondent's *92 answer. "The return" referred to in the petition has reference to the "card form 1040A" above mentioned. The admission of the answer has reference to a Form 1040 filed with the district director at Detroit on April 15, 1957. The latter form purports to be the income tax return of petitioner and bears what is ostensibly her signature. It discloses total wages received by petitioner from "Aetna Insurance Detroit, Mich." in the amount of $596.24 with income tax withheld therefrom of $83.34 and from "Detroit Insurance AgencyDetroit" in the amount of $3,159.66 with income tax withheld therefrom of $467.92. On page 2 of the filed Form 1040 is an itemization of contributions in the total amount of $800, interest payments in the total amount of $311.56, and deductible taxes paid in the total amount of $101.70. On this form, after deducting the reported income tax of $388.53 from the total tax reported as withheld of $551.26, an overpayment of tax is shown in the amount of $162.73 which amount is requested to be refunded. One of the itemized contributions is reported as made to the Methodist Church in the amount of $500. Petitioner, during 1956, attended and made contributions to a Methodist *93 Church. One of the itemized payments of interest is reported to have been made to "E. Silvey, Lakewood Florida" in the amount of $286.56. E. Silvey is the person to whom petitioner, in 1956, made payments upon a real estate mortgage upon her home at the address listed upon the 1040 return, 814 Stanley Ct., Royal Oak, Michigan. In due course in accord with the request for refund contained in the 1040 return as filed, a refund check in the amount of $162.73 was drawn upon the Treasurer of the United States payable to petitioner. On June 29, 1957, the check was cashed at The Wayne-Oakland Bank at Royal Oak. The check now bears on its reverse side as an endorsement, the ostensible signature of petitioner. During 1956 and 1957 petitioner maintained a checking account at that bank where she was able to cash checks without proof of her identity. At some time before the issuance of the 90-day letter herein and after petitioner was aware of the foregoing facts, she, in writing, denied to the respondent that the Form 1040 return was prepared or filed by her and denied that it bore her signature. She likewise denied she had requested a refund or had received, endorsed or cashed the refund *94 check above mentioned. She also denied having taken as deductions any of the disallowed charitable and interest items listed in the statement attached to the deficiency notice. After such denial on the part of petitioner, respondent engaged the services of a qualified expert in the art of determining the authenticity and authorship of handwriting. To this expert was presented for consideration and opinion the refund check, the Form 1040 tax return, and a list of many consecutive signatures of petitioner voluntarily prepared by her and submitted to the respondent. In the opinion of the expert the signature on the tax return and the endorsement on the check were authored by the same person who prepared the list of signatures mentioned above. In the expert's opinion it would be possible for an experienced forger, after practice, to have so successfully imitated petitioner's signature on the return and the check as to mislead a handwriting expert as to their authorship. The type of writing exemplified by petitioner's true signature is however the most difficult to successfully imitate. Petitioner was employed, during 1956 and 1957, as an "insurance underwriter." She is a person of at *95 least average business, acumen and intelligence. She has filed her own income tax return on occasions prior to 1956. The Form 1040 tax return for 1956 upon which the deficiency herein is based is the 1956 income tax return of petitioner. Petitioner received and cashed the refund check referred to above. Opinion Petitioner concedes that she is not entitled to the deductions from her 1956 taxable income which were disallowed by respondent. In fact, she insists that she at no time took such deductions inasmuch as she claims not to have filed the Form 1040 income tax return for 1956 upon which the deficiency herein is based. The record does not support her contention and we have therefore found as a fact that she did file such return. In view of her concession, this finding is dispostive of the issue before us. The only proof offered by petitioner is her own testimony to the effect that although the signature on the return and the endorsement on the refund check are sufficiently like her own to convince her they are genuine, she knows they are not because she did not prepare or file the return and never requested, received or cashed the refund check requested therein. She testified *96 further that she did "file" a "short form" 1040A return in which no deductions were taken in the following manner: She delivered the Form 1040A to a person in the lobby of the Federal Court and Post Office Building at Detroit, Michigan. She also gave him a list of contributions and interest payments. While it is entirely possible that petitioner did as she testifies regarding the Form 1040A, we think it beyond credence to believe that she, an insurance underwriter who had properly filed her own income tax return on prior occasion, considered the mere handing of a prepared short form to a stranger constituted the lawful filing of her 1956 income tax return. It is true that the testimony of the handwriting expert to the effect the signature on the filed return and the endorsement on the refund check are her genuine signatures is qualified by his statement that an experienced forger could copy her signature with sufficient skill to mislead him (the expert), but petitioner has not offered any evidence from which we can conclude that the forgery of such signatures actually occurred. Further, she has failed utterly to point by evidence to any such forger who would have sufficient knowledge *97 of her personal and business affairs to list the contributions to her church, interest payments to the person from whom she was buying her home, and the approximate amount of the deductible taxes thereon. She has likewise failed to rebut the expert opinion of the Government handwriting expert even though the burden to do so rests upon her. Decision will be entered for the respondent.